UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIMOTHY E. KING,

    Plaintiff,

        v.                                                    CAUSE NO. 3:23-CV-203-JD-AZ

JOHN GALIPEAU, et al.,

    Defendants.

OPINION AND ORDER

Timothy E. King, a prisoner without a lawyer, filed a complaint. ECF 1. "Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because King is proceeding without counsel, his allegations must be given liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

King alleges he was "viciously assaulted, battered, stabbed, and threatened" by three different inmates on four separate occasions at the Westville Correctional Facility between 7:00 PM and 6:45 AM on December 12–13, 2022. ECF 1 at 4. He claims Lieutenant Bradford, Sgt. Thorpe, Sgt. McGowen, Officer A. Finucant, Officer Penny-Money, and Officer Walker were "made aware" that King had been injured and his "life was in clear and present danger," but they failed to move him to a safe location or otherwise protect him during the course of multiple attacks. *Id*. Afterwards, on December 13th at approximately 7:00 PM, King directly asked Sgt. T. Miles if he could be placed in protective custody (PC). Several hours later he was escorted to a housing cell "in the squadroom of the Industrial Complex" where he remained until 1:45 AM when he was taken to the urgent care unit for treatment of his injuries. *Id*. at 5.

Once in the urgent care unit, a medical technician—who is not named as a defendant—ignored King's complaints of pain, "refused to clean" his numerous stab wounds, and denied him pain medication. *Id*. Instead, he simply asked King routine questions and sent him back to a holding cell. At approximately 5:30 AM, he was escorted, in handcuffs, to a PC unit by Sgt. Miles and Sgt. Gibson. He didn't receive any additional medical treatment—nor does he allege he requested any—for forty-two days. On January 24–25, 2023, X-ray Technician Flavio performed an x-ray. At that point, King "began writing multiple medical request[s] and grievances." *Id*. On February 23rd, King was seen by Nurse Practitioner T. Marni who prescribed meloxicam for the pain and informed him he would be referred to an orthopedist. He had not been seen by the orthopedist as of the time he filed his complaint. King has sued a variety of prison

officials and medical professionals—including Warden John Galipeau,[1] Director of

Education Complex Warr, Captain of Education Complex Timothy Darenski,

Lieutenant Bradford, Sgt. Hogan, Sgt. T. Miles, Sgt. McGowen, Sgt. Thorpe, Sgt. I.

Gibson, Officer Salazar, Officer Walker, Officer Penny-Money, Officer A. Finucant,

Director of Nursing Nicole Bridegroom, L.P.N. A. Kiley, Psy. D. H.S.P.P. M. Wala, X-ray

Technician Flavio, Nurse Practitioner T. Marni, and L.P.N. J. Ochs—for "subjecting him

to cruel and unusual punishment(s), medical neglect, and deliberate indifference." *Id*. at

6.

As an initial matter, King doesn't mention several of the defendants in the body

of his complaint. With regard to the supervisory defendants, he vaguely states that

Warden Galipeau is "responsible for the training of employees and the supervision of

inmates." ECF 1 at 4. However, vague allegations like these must fail, as supervisor

liability is insufficient to state a claim. *See e.g., Mitchell v. Kallas*, 895 F.3d 492, 498 (7th

Cir. 2018) and *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (both noting that

liability under 42 U.S.C. § 1983 is based on personal responsibility and that prison

officials cannot be held liable for damages solely because they hold supervisory

positions). This is a high standard, designed to ensure that "supervisors are responsible

for their own acts but not for those of subordinates, or for failing to ensure that

subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th

Cir. 2018). Therefore, the individual capacity claims against the supervisory

---

[1] Of note, John Galipeau is no longer Warden of WCF.

defendants—Warden Galipeau, Director Warr, Captain Darenski, and Director

Bridegroom—will be dismissed.[2]

Similarly, King doesn't mention Sgt. Hogan, Officer Salazar, L.P.N. Kiley, Psy. D.

Wala, or L.P.N. Ochs anywhere in the body of his complaint. Without further details

about their role in the incident(s), the allegations against them are insufficient as well.

*See Burks*, 555 F.3d at 596 ("[P]ublic employees are responsible for their own misdeeds

but not for anyone else's."); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only

persons who cause or participate in the violations are responsible."); *see also Bissessur v.*

*Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face

and complaint must provide adequate factual content). Accordingly, the individual

claims against Sgt. Hogan, Officer Salazar, L.P.N. Kiley, Psy. D. Wala, and L.P.N. Ochs

will be dismissed.

This leaves two groups of defendants—the officers who allegedly failed to secure

his safety on the night of the attacks and the medical professionals. With regard to the

first group, the Eighth Amendment imposes a duty on prison officials "to take

reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S.

825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the

hands of other prisoners." *Id.* at 833. That said, not every such violent altercation

---

[2] To the extent King is attempting to bring claims against the Warden on a failure to train theory—even putting aside the sparsity of the allegations—he may not proceed on this type of claim because "in the Eighth Amendment context, such [failure to train] claims may only be maintained against a municipality." *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 739–40 (7th Cir. 2001)). The Warden is not a municipality in either his individual or official capacity, so King hasn't stated any failure to train claims against him.

violates the Constitution. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). "Rather,

only deliberate indifference to an inmate's wellbeing is actionable: a prison official is

liable for failing to protect an inmate from another prisoner only if the official knows of

and disregards an excessive risk to inmate health or safety." *Id.* (internal quotation

marks, brackets, and citations omitted). Accordingly, when an inmate is attacked by

another inmate, the Eighth Amendment is violated only if "deliberate indifference by

prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*,

86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference." *Farmer*, 511 U.S. at 837. "[A] complaint that identifies a

specific, credible, and imminent risk of serious harm and identifies the prospective

assailant typically will support an inference that the official to whom the complaint was

communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481

(7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are

insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633,

639–40 (7th Cir. 2008). "[P]risons are dangerous places," as "[i]nmates get there by

violent acts, and many prisoners have a propensity to commit more." *Grieveson v.

Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

In the context of failure to protect cases, the Seventh Circuit has equated

"substantial risk" to risks so great that they are almost certain to materialize if nothing

is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see also Thomas v. Dart*, 39 F.4th

835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk'

[associated with mental health issues] does not necessarily correlate to a 'substantial risk'"). Rather, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "Exercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997).

Here, King alleges Lieutenant Bradford, Sgt. Thorpe, Sgt. McGowen, Officer Finucant, Officer Penny-Money, and Officer Walker were specifically "made aware" that he had been injured and that his life remained in "clear and present danger" during the course of several sequential attacks. He claims he was battered, stabbed forty-three times, and threatened during four separate attacks over approximately twelve hours, spanning a two-day period. Although King's allegations are sparse, the court will give him the benefit of the inferences to which he is entitled at this stage and allow him to proceed against these officers in their individual capacities for being deliberately indifferent to his needs on a failure to protect theory.

King also claims that, after the attacks, he asked Sgt. Miles directly if he could be placed in a PC unit. Sgt. Miles responded by escorting him to a secured holding cell where he remained for several hours before he was taken to urgent care.[3] After being seen by a medical technician, Sgt. Miles and Sgt. Gibson then escorted him to a PC unit as requested. Based on these allegations, it cannot be plausibly inferred that either of

---

[3] He does not claim he suffered further attacks after he spoke with Sgt. Miles.

6

these officers failed to protect him, as he was promptly removed from the cell where he

had been attacked once he made the request to Sgt. Miles and then taken to a PC unit

after being assessed by medical. These claims will be dismissed.[4]

With regard to the medical defendants, under the Eighth Amendment, inmates

are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*,

2 F.4th 716, 722 (7th Cir. 2021). However, they are "not entitled to demand specific

care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are

they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997);

*see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment

does not require that prisoners receive unqualified access to health care."). Rather, they

are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*,

112 F.3d at 267. The court will "defer to medical professionals' treatment decisions

unless there is evidence that no minimally competent professional would have so

responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation

marks omitted). This standard "reflects the reality that there is no single 'proper' way to

practice medicine in a prison, but rather a range of acceptable courses based on

prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019)

(citation and internal quotation marks omitted). Additionally, it is not enough that a

medical professional be mistaken in his or her judgment. As noted above, the deliberate

indifference standard requires a something "akin to criminal recklessness," *Thomas*, 2

---

[4] To the extent King alleges Sgt. Miles was deliberately indifferent to his medical needs for several hours before he was taken to urgent care, that claim will be addressed below.

7

F.4th at 722, rather than "negligence, gross negligence, or even recklessness." *Hildreth*,

960 F.3d at 425–26. Ignoring an inmate's complaints of pain or delaying necessary

treatment can amount to deliberate indifference, particularly where the delay

"exacerbates the plaintiff's condition or unnecessarily prolongs suffering." *Goodloe v.*

*Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks

omitted).

Here, King alleges he was denied pain medication and proper cleaning/care for

his stab wounds on the morning following the attack; however, he hasn't sued (or

identified as a defendant) the medical technician who failed to treat him. King also

alleges X-ray Technician Flavio performed x-rays in January, but these sparse

allegations don't state a claim. *See e.g.*, *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th

Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the

hands of an imaginative reader, *might* suggest that something has happened to her that

*might* be redressed by the law.") (emphasis in original)). Furthermore, King admits he

did not begin seeking medical requests or writing grievances until after the x-rays were

performed in late January. He was then seen by Nurse Practitioner T. Marni on

February 23, 2023, and she prescribed him meloxicam for pain and said he would be

referred to an orthopedist. It's unclear from King's complaint why he would need to see

an orthopedist for the attack that occurred months before, or what his specific,

objectively serious medical condition is. However, it is clear that his allegations against

Nurse Marni in her individual capacity fail to state a claim, as, without more, the care

described — prescribing him pain medication and referring him to an orthopedist —

doesn't plausibly violate the Eighth Amendment.[5] Overall, the complaint is short on facts, dates, and specifics about the medical treatment he allegedly requested yet was denied. Based on what it does say, it is not plausible to infer King is not receiving constitutionally adequate medical care. *See e.g.*, *Swanson, N.A.*, 614 F.3d at 403; *see also Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.") (quotation marks and brackets omitted)). Accordingly, the claims against X-ray Technician Flavio and Nurse Marni will be dismissed.

Finally, King claims Sgt. Miles was deliberately indifferent to his needs following the attack because—despite speaking with Sgt. Miles directly at approximately 7:00 PM on December 13th—he was not taken to the urgent care unit for approximately seven hours. Based on King's description of the attack—wherein he claims he was stabbed repeatedly—it can plausibly be inferred that Sgt. Miles knew King was seriously injured yet was deliberately indifferent to his needs by failing to ensure he was taken to the medical care unit during that timeframe. Thus, he will be allowed to proceed on an Eighth Amendment claim against Sgt. Miles based on these allegations. [6]

For these reasons, the court:

---

[5] Of note, King doesn't describe any further interactions with Nurse Marni or allege he made additional requests to her.

[6] To the extent King is attempting to bring a claim against Sgt. Miles related to his medical care *after* he was brought to the urgent care unit and was assessed by the unnamed technician, this claim fails because non-medical staff are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks*, 555 F.3d at 595.

(1) GRANTS Timothy E. King leave to proceed against Lieutenant Bradford, Sgt. Thorpe, Sgt. McGowen, Officer A. Finucant, Officer Penny-Money, and Officer Walker in their individual capacities for compensatory and punitive damages for being deliberately indifferent to his needs by failing to protect him from the ongoing attack by other inmates that occurred on December 12–13, 2022, in violation of the Eighth Amendment;

(2) GRANTS Timothy E. King leave to proceed against Sgt. T. Miles in his individual capacity for compensatory and punitive damages for being deliberately indifferent to his medical needs from approximately 7:00 PM on December 13, 2022, to approximately 1:45 AM on December 14, 2022, in violation of the Eighth Amendment

(3) DISMISSES all other claims;

(4) DISMISSES Warden John Galipeau, Director Warr, Captain Timothy Darenski, and Director Nicole Bridegroom, Sgt. Hogan, Sgt. I. Gibson, Officer Salazar, L.P.N. A. Kiley, Psy. D. H.S.P.P. Wala, X-Ray Technician Flavio, Nurse Practitioner T. Marni, and L.P.N. J. Ochs;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Lieutenant Bradford, Sgt. Thorpe, Sgt. McGowen, Officer A. Finucant, Officer Penny-Money, Officer Walker, and Sgt. T. Miles at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

10

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Lieutenant Bradford, Sgt. Thorpe, Sgt. McGowen, Officer A. Finucant, Officer Penny-Money, Officer Walker, and Sgt. T. Miles to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 2, 2025

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT